# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

CHRISTOPHER EAGLE,

    Plaintiff,               CASE NO.:

v.

MONITRONICS SECURITY LP
d/b/a BRINKS HOME SECURITY,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, CHRISTOPHER EAGLE, by and through the undersigned counsel, and sues Defendant, MONITRONICS SECURITY LP d/b/a BRINKS HOME SECURITY, and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## INTRODUCTION

1. The TCPA was enacted to prevent companies like MONITRONICS SECURITY LP d/b/a BRINKS HOME SECURITY (hereinafter, "Defendant" or "Brink's") from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the *1256 scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls are far and away the biggest consumer complaint to the FCC with over 200,000 complaints each year – around 60 percent of all the complaints…Some private analyses estimate that U.S. consumers received approximately 2.4 billion robocalls per month in 2016." *The FCC's Push to Combat Robocalls & Spoofing* (website visited on Jan. 2, 2019), https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing.

## JURISDICTION AND VENUE

5. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

7. The alleged violations described herein occurred in Paulding County, Georgia. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

8. Plaintiff is a natural person, and citizen of the State of Georgia, residing in Hiram, Paulding County, Georgia.

9. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10. Defendant, MONITRONICS SECURITY LP d/b/a BRINKS HOME SECURITY, is a foreign limited partnership with its principal place of business located at 1990 Wittington Place, Farmers Branch, Texas 75234, and which conducts business in the State of Georgia through its registered agent, C T Corporation System, located at 289 South Culver Street, Lawrenceville, Georgia 30046-4805.

11. Defendant called Plaintiff approximately one hundred fifty (150) times in an attempt to collect on an alleged debt related to Plaintiff's home security system.

12. Upon information and belief, some or all of the calls Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

13. Plaintiff will testify that his knew it was an autodialer because of the vast number of calls he received and because he heard an extended pause of approximately three to five seconds when he answered his phone before a voice came on the line and identified themselves as an agent/representative of Defendant.

14. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (770) ***-2859, and was the called party and recipient of Defendant's calls.

15. Defendant placed an exorbitant number of automated calls to Plaintiff's cellular telephone (770) ***-2859 in an attempt to collect on an alleged debt related to an overdrawn checking account.

16. On several occasions over the last several months, Plaintiff instructed Defendant's agent(s) to stop calling his cellular telephone.

17. On or about December 17, 2018, Plaintiff received a call from Defendant, was met with an extended pause, was eventually connected to a live agent/representative of Defendant, explained that he was aware of his obligations, he would make the payment as soon as he was able, and Plaintiff demanded that Defendant cease placing automated calls to his aforementioned cellular telephone number.

18. During the aforementioned phone conversation on or about December 17, 2018 with Defendant's agent/representative, Plaintiff unequivocally revoked any express consent Defendant may have believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

19. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

20. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and/or willful.

21. The very next day, on or about December 18, 2018, due to the continued automated calls, Plaintiff answered another call from the Defendant, was met with an extended pause, was eventually connected to an agent/representative of Defendant, explained to the agent/representative that he already requested they stop calling him, and again demanded that Defendant cease placing calls to his aforementioned cellular telephone number.

22. Similarly, due to the continued automated calls, Plaintiff answered yet another call from Defendant on or about January 16, 2019, was met with an extended pause, was eventually connected to a live agent/representative of Defendant, and explained to the agent/representative that he had already directed them multiple times to stop calling him and again demanded that Defendant cease placing calls to his aforementioned cellular telephone number.

23. On at least three (3) separate occasions, Plaintiff has either answered a call from Defendant or returned a call to Defendant regarding his account, held the line to be connected to a live agent/representative, and demanded that Defendant cease placing calls to his aforementioned cellular telephone number.

24. Each of the Plaintiff's requests for the harassment to end was ignored.

25. From about December 17, 2018 through the filing of this Complaint, Defendant has placed approximately one hundred (100) actionable calls to Plaintiff's aforementioned cellular telephone number.

26. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to Plaintiff's cellular telephone in this case.

27. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff or Defendant, to remove the number.

28. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they do not wish to be called.

29. Defendant's corporate policy provided no means for Plaintiff to have Plaintiff's number removed from Defendant's call list.

30. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

31. Not one of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

32. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff.

33. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

34. From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of his cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's call.

35. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of his time. For calls he answered, the time he spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

36. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance

and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

37. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

38. Each and every call placed without express consent by Defendant to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

39. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular phone and his cellular phone services.

40. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, frustration and aggravation.

## COUNT I
**(Violation of the TCPA)**

41. Plaintiff fully incorporates and realleges paragraphs one (1) through forty (40) as if fully set forth herein.

42. Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Plaintiff wished for the calls to stop

43. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against MONITRONICS SECURITY LP d/b/a BRINKS HOME SECURITY for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/ Octavio Gomez*
Octavio Gomez, Esq.
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor

Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
tgomez@forthepeople.com
shill@forthepeople.com
slauredan@forthepeople.com
Georgia Bar #: 617963

*Attorney for Plaintiff*